FILED

2023 Jul-24  PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **Alaska Air Group, Inc.,** *et al.*,<br>     **Plaintiffs,**<br>**v.**<br>**Anthem, Inc.,** *et al.*,<br>     **Defendants.** | **No. 2:21-cv-01209- RDP** |
| **JetBlue Airways Corporation,** *et al.*,<br>     **Plaintiffs,**<br>**v.**<br>**Anthem, Inc.,** *et al.*,<br>     **Defendants.** | **No. 2:22-cv-00558- RDP** |
| **Bed Bath & Beyond Inc.,** *et al.*,<br>     **Plaintiffs,**<br>**v.**<br>**Anthem, Inc.,** *et al.*,<br>     **Defendants.** | **No. 2:22-cv-01256-RDP** |

**STIPULATED ORDER RELATING TO THE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**

Plaintiffs and Defendants in the above-captioned actions ("Proceedings") hereby agree to the

following concerning the production of documents and electronically stored information ("ESI").

**I.      Scope**

a.   <u>General</u>.  The procedures and protocols outlined herein govern the production[1] of

documents and ESI by all parties to this matter (collectively, the "Parties"). All Productions made

pursuant to this Protocol are subject to the forthcoming Protective Order.

---

[1]      "Production" or "Produced" includes any exchange of documents or electronically stored information

b. <u>Objective</u>.  This Protocol is designed and shall be interpreted such that, subject to any objections by the Party producing documents or ESI ("Producing Party"), responsive, non-privileged[2] documents and ESI are produced by the Producing Party with a minimum of unnecessary costs.  To the extent reasonably practicable, the production of documents or ESI shall be conducted to maximize efficiency and minimize discovery costs.  The terms of this Protocol shall be construed to facilitate the prompt, efficient, and cost-effective exchange of information.  Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Producing Party or the Party requesting the documents or ESI ("Requesting Party").[3]

c. <u>Limitations and Non-Waiver</u>.  The Parties and their attorneys do not intend by establishing and complying with this Protocol to waive their objections to the production of documents or ESI or rights to any protection or privilege, including the attorney-client privilege or the attorney work product doctrine.  All Parties preserve their objections, attorney-client, attorney work product, and other privileges and protections, and do not intend to in any way waive or weaken these objections, privileges, and protections through the Protocol.  All documents and ESI produced hereunder are fully protected and covered by any protective orders entered by the Court in this matter.

d. <u>Variation</u>. In light of the disparate data systems and architectures employed by various Parties, variations from this Protocol may be required. In the event that any Party identifies a circumstance where application of this Protocol is not technologically possible, would be

---

between the Parties, whether voluntarily or in response to a formal or informal request.

[2]      As used in this Protocol, "Privilege" or "Privileged" refers broadly to the attorney-client privilege, the work product protection, or any other legal privilege or protection against disclosure of documents or ESI that may be asserted by a Party.

[3]      This Protocol does not waive any arguments regarding whether and when to reproduce documents produced in MDL No. 2406, Master File No.: 2:13-CV-20000-RDP (the "MDL").

inefficient, unduly burdensome, or impractical, or when another process would satisfy the objective and reach the same result with less burden, the Party will notify the Requesting Party and propose an alternative procedure that is not unduly burdensome or impractical, if one exists. Upon request by the Requesting Party, those Parties will meet and confer regarding the circumstances and proposed alternative approaches.

## II.     Identification of Responsive Documents and ESI

a.     <u>Sources of Discoverable Information.</u> The Parties shall meet and confer to identify a reasonable list of custodians that the Parties initially determine to be most likely to have unique, relevant and responsive information. The Parties reserve the right to meet and confer to discuss supplementing the list of custodians.

b.     <u>Search Methodologies for Unstructured Electronic Data.</u>  The Parties recognize and agree that each Party may use one or more search methodologies to collect, review and produce relevant and responsive, non-privileged documents and ESI in response to Rule 34 Requests for Production that require the collection, review and production of unstructured data. Prior to conducting a search for responsive ESI, the Requesting Party and Producing Party shall meet and confer regarding the search methodologies to be used (e.g., search terms, technology-assisted review ("TAR") or other advanced analytics culling mechanisms), and the document sources to which they will be applied. The Parties further agree to meet and confer to the extent there are questions about whether the search methodology to be used is reasonable and appropriate. Any search methodology used by a Producing Party to search for responsive documents will include any associated attachments and embedded files where feasible. Nothing in this Protocol will be interpreted to require the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection.

c. <u>Filtering:</u>

i. De-Duplication. The Producing Party need only, but is not required to, produce a single copy of a particular unique electronic document.

1. Vertical Deduplication (i.e., within a custodian). A Producing Party may de-duplicate ESI vertically by custodian, provided however, that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all other content in the email is identical.

2. Horizontal Deduplication (i.e., across custodians). A Producing Party may de-duplicate ESI horizontally (globally) across the population of records provided that the Producing Party discloses to the Requesting Party that it has de-duplicated horizontally and that all custodians who were in possession of a de-duplicated document, and the directory structure where the custodian stored the de-duplicated document, are identified in the AllCustodian and AllFilepaths metadata fields specified in Appendix A. To ensure accuracy, the All Custodian and AllFilepaths metadata fields must be captured by an automated process to the extent feasible. The aforementioned metadata must be produced to the extent it exists. In the event of a rolling production of documents or ESI, the Producing Party shall provide an overlay load file with updated AllCustodian and AllFilepaths metadata fields along with each

production or shortly thereafter. The metadata overlay may contain a full refresh of data for the AllCustodian and AllFilepaths metadata fields or be a supplement to the information previously provided for those fields. At the time of production, the Producing Party shall identify the overlay as a full refresh or a supplement.

3. E-mail threading. In order to reduce unnecessary volume in the review and production of e-mails, the Parties are permitted to use commercially reasonable e-mail threading tools to remove e-mails and their attachments where the contents of an e-mail and its attachments are wholly included within another e-mail and its attachments that are not removed. If a Producing Party utilizes e-mail threading for production, then the Producing Party will provide the following metadata fields for documents suppressed from production as a result of e-mail threading: EMAIL THREADING ID, EMAIL THREAD GROUP, CUSTODIAN, ALL CUSTODIAN, DATETIMESENT, DATETIMERECEIVED, DATETIMECREATED, DATETIMEMODIFIED, AUTHOR, TO, FROM, CC, BCC, SUBJECT, ALL FILE PATH; FOLDER PATH; HASH VALUE; AND CONTROL ID. The Parties further agree that upon reasonable request by a Receiving Party to counsel of record for a Producing Party, the Producing Party shall produce to the Receiving Party non-privileged copies of documents suppressed

from production, and the Producing Party agrees to not use the fact of the request as a basis for witness preparation.

ii. If a Producing Party elects to de-duplicate, the Producing Party shall identify ESI duplicates by using industry standard MD5 or SHA- 1 algorithms (or a reasonably equivalent alternative) to create and compare hash values for exact duplicates only. Other methodologies that are substantially different for identification of duplicates must be discussed with the Requesting Party and approved in writing before implementation. The resulting hash value for each item shall be reflected in the HASH Value field specified in Appendix A.

iii. The Requesting Party and Producing Party hereby agree that production of documents and ESI globally de-duplicated in accordance with the provisions of this ESI Protocol shall constitute production of documents as maintained in the ordinary course of business. No Producing Party shall be required to eliminate duplicates by manual review, including hard copy documents that are exact duplicates of electronic versions.

d. De-NISTing System Files. ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.  Other file types may be added to the list of excluded files by agreement of the Parties.

e.   Zero-byte Files. The Parties may, but are not required to, filter out stand-alone files or attachments identified as zero-bytes in size that do not contain responsive file links or file names.

f.   Preservation. The Parties agree that there is no need to modify or suspend the procedures used by any Party in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations. The Parties are not required to take any such backup media out of the ordinary rotation and are not required to preserve any backup tapes to the extent they are duplicative of data that is otherwise accessible. The Parties further agree that pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), a Party need not provide discovery of ESI from sources that are not reasonably accessible because of undue burden or cost. None of the foregoing shall impact the Parties' efforts to preserve documents related to this litigation through the use of litigation holds or otherwise.

g.   Hyperlinked Files.  A Producing Party is not required to produce hyperlinked files as part of the same document family as the document containing the hyperlink, provided however, that upon a reasonable and particularized request, a Producing Party will produce or identify such files to the extent it can locate them and provided that such documents are relevant and not otherwise protected from production, including by attorney-client privilege or the work product doctrine.

h.   Hard-Copy Documents.  Hard-copy documents are to be scanned and produced electronically as images.  Reasonable efforts are to be employed to scan the pages of hard-copy documents in the same order in which they are maintained in the ordinary course of business; to treat pages that are stapled, clipped, or otherwise clearly appear to be part of the same document as a single document; and to treat documents that clearly appear to be separate documents as

7

separate documents.  For hard-copy documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable.  Original document orientation (*i.e.*, portrait v. landscape) should be maintained to the extent practicable.  To the extent feasible, searchable text shall be created using OCR.

      i.  <u>Password-Protected, Encrypted, or Proprietary-Software Files</u>. With respect to any documents or ESI that are password-protected or encrypted within the scope of review, the Producing Party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate.

## III.    Production Format

For documents produced in this litigation that were previously produced in *In re: Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, Master File No.: 2:13-CV-20000-RDP (the "MDL"), those productions can be made in this litigation consistent with the production specifications and format described in Discovery Order No. 7 (Doc. 356) and the confidentiality designations applied to those documents or ESI in the MDL. The production format shall otherwise be as follows:

      a.  <u>TIFF/Native File Format Production</u>.  The Parties agree that all non-redacted versions of Microsoft Excel spreadsheets and other spreadsheet files, including comma or tab delimited text files, relational database files, Microsoft Power Point or other presentation files, video or audio files, and other multimedia files will be produced in native format, if available; if such documents contain redactions, they will be produced in TIFF format.  Other documents that cannot be rendered to TIFF conversion may also be produced in native file format. Each document produced in native format shall be assigned a unique Bates number as set forth in Section III.e, and the database record for that file shall include a single-page TIFF image branded with this Bates

number, any confidentiality designation, and the phrase "Document Produced Natively." If a document that would otherwise be produced natively must be redacted prior to production, the document may be produced with redactions in TIFF format as set forth in Section III.i(ii) or in native format.  Documents produced in native format with redactions must also be preserved in unredacted form. The production load files shall contain a path link to the produced native file as specified in the "NATIVELINK" metadata field described in Appendix A.  All other documents will be produced as black-and-white single page Group IV TIFF 300 DPI with corresponding multi-page text, and necessary load files.  A Party may produce a document in color to the extent it chooses to do so and to the extent that the original document is maintained in color.  Native files, along with corresponding metadata, will be preserved.  No Party may request or seek to compel the production of ESI in native format on a wholesale basis.  Subsequent to the production of documents, however, the Requesting Party may request from the Producing Party that certain imaged files be produced in native format because the files are difficult to read in an imaged form. The load files will include an image load file as well as a metadata (.DAT) file with the metadata fields identified in Appendix A on the document level to the extent available.   In certain circumstances, variations to the production format specified in this Protocol may be necessary.  In such circumstances, the Parties will meet and confer regarding the production format.

  b.  <u>Metadata</u>.  No Party has an obligation to create or manually code fields that are not automatically generated by the processing of the ESI, that do not exist as part of the original metadata of the document, or that would be unduly burdensome or costly to obtain.  The Parties shall provide the metadata fields attached as Appendix A associated with each document produced, to the extent they are reasonably available and contain non-privileged information, in a Concordance-format delimited file with a .DAT file extension using Concordance default

delimiters, including ASCII 020 and 254 delimiters for column break and text qualifier, and new line as ASCII 174. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each document. If requested in advance and agreed to by the Requesting Party, the Producing Party shall be able to choose alternative delimiters. When a document is withheld for attorney-client privilege or work product, all metadata for the withheld document is excluded from the .DAT file.

c. <u>Color</u>.  After production, the Requesting Party may request that a produced image in black and white TIFF be produced in color where color is material to the understanding of the document, at which time the Parties may meet and confer about such production.

d. <u>Structured Data</u>.  To the extent possible, all exports of structured data or reports from databases will be produced in data table, .csv file, Excel file, or other delimited text format.

e. <u>Document Numbering</u>.  Each page of a produced document will have a legible, unique page identifier ("Bates number") electronically "burned" onto the image at a location that must not obliterate, conceal, or interfere with any information from the source document. The Bates number for each page of each document will be created so as to identify the Producing Party and each Producing Party shall use a consistent prefix and number padding across their respective productions.

  (i) If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

  (ii) Numerical suffixing is permitted where re-production of documents previously produced as slipsheets occurs.

(iii)     For documents produced in native format such that "burning" a Bates number onto each page is not possible, the Bates number shall be affixed to the document by an alternative means, such as to the file name of the produced native document.

(iv)     Should a Bates number or other designation obscure any information originally appearing on the document, the Producing Party will reproduce such document upon reasonable request.

f.     <u>Embedded Documents</u>.   Embedded documents or ESI (e.g., a spread sheet embedded within a word processing document) will, to the extent possible, be extracted, produced as a child document, and related back to its top-level parent document (e.g., standalone file, email message, etc.) via the BegAttach and EndAttach fields referenced in Appendix A.

g.     <u>Embedded Objects</u>.  Embedded objects within documents or ESI, including logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as child documents provided they are produced within the document itself.  A Requesting Party may reasonably request a Producing Party to produce a document with the embedded objects extracted as separate files if material to the understanding of the document.

h.     <u>Entire Document Families</u>.  To the extent they are maintained together, entire responsive document families must be produced and shall be consecutively Bates numbered with parent documents followed immediately by all child document(s), even if only one member of the family (*e.g.*, the parent email or an attachment to an email is responsive), excepting (1) junk files and non-user-created content routinely excluded during processing, and (2) documents that are withheld on the bases of privilege or other protection and in compliance with the Parties' stipulation or the Court's order on such assertions of privilege or other protections.  The child

document(s) must be mapped to their parent document by the Bates number using the "BegAttach" and "EndAttach" fields designating the beginning and ending of each document family, in accordance with Exhibit A.

      i.   <u>Text Files</u>.  Each document produced under this ESI Protocol shall be accompanied by a single, multipage text file containing all of the text for that document (as opposed to one text file per page of such document). Each text file shall be named using the Bates number of the first page of the corresponding production item and the production load file shall contain a path link to the produced text file in the "TEXT" metadata field described in Appendix A.

         i.   **ESI:**  The text of each ESI item shall be extracted directly from the ESI native file. To the extent that is not technically possible (e.g., the underlying native file is an image file), the text for each ESI item shall be generated by applying OCR to the native file under the provision above. For contacts and calendars, user-modifiable fields shall be extracted and produced as text.

         ii.   **OCR:** To the extent that documents have been run through OCR software, the full text shall be provided on a document-level basis in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document.  To the extent that a document is redacted, the text files shall not contain the text of the redacted portions, but shall indicate where the redactions were made, e.g. with the notation "REDACTED".

      j.   <u>Claims of Confidentiality</u>.  If the Producing Party produces ESI subject to a claim that it is protected from disclosure under a protective order, confidentiality order, or stipulation entered into by the Parties, the Producing Party shall electronically "burn" the specific level of confidentiality claimed onto each page of the document at a location that does not obliterate,

conceal, or interfere with any information from the source document.  Failure to comply with this procedure shall not waive any protection of confidential treatment.  For documents produced natively such that "burning" a designation into an image is not possible, confidentiality designations may be made by alternate means such as appending the level of confidentiality to the file name. In the case of information or materials redacted, the Producing Party shall reflect such redaction with a "Redacted" label "burned" onto the document's image in the same area(s) as the redacted information appears.

       k.  <u>Production Media</u>.  The Producing Party shall produce document images, native format files, text and/or OCR files, load files, and metadata on hard drives, CDs, DVDs, secure FTP, USBs or other format drive storage, or other secure file transfer utility or other mutually agreeable media ("Production Media").  Production volumes may be produced via FTP or other electronic transfer system, without a separate agreement.  Productions made via FTP or other electronic transfer are not required to be supplemented with hard media containing the same documents.  Each piece of hard media shall include a unique identifying label stating the identity of the Producing Party, the date of the production of documents on the hard media, the disk number (1 of X, 2 of X, etc.) if applicable, the production volume, and the Bates number range(s) of the documents in the production.  For productions delivered via a secure file transfer utility, the Producing Party shall provide a letter containing the information that would otherwise be on the label.  To the extent that the Production Media includes any confidential information protected under any applicable protective order filed with the Court, the label on such Production Media shall indicate that the Production Media includes information so designated.  All Production Media that is capable of write protection should be write-protected before production.  All Production

Media must be encrypted, with the Producing Party to provide a decryption key under separate cover at the time of production.

## IV.   Processing Specifications

The Producing Party shall collect and process documents using reasonable methods that preserve available data. To the extent reasonably feasible upon collection, the Producing Party shall use the following specifications when converting ESI from its native format into TIFF image files prior to production:

(a) All tracked changes shall be maintained as last saved, to the extent reasonably feasible upon collection, so that all changes to a document are evident, unless redactions are necessary to remove privileged material.

(b) All Word documents shall include and show field codes for auto-date and auto- time fields.

(c) Author comments shall remain or be made visible, unless redactions are necessary.

(d) Presenter notes within a presentation shall be made visible, to the extent reasonably feasible upon collection and unless redactions are necessary.

(e) To the extent reasonably practicable, ESI should be processed with a consistent time zone within a Producing Party's productions, and the time zone used shall be disclosed to the Requesting Party.  Absent an agreement between a Requesting Party and a Producing Party to the contrary, the default time zone for processing shall be Coordinated Universal Time ("UTC").

(f) To the extent technically feasible and without unreasonable cost, ESI shall be processed in a manner that maintains and displays all hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments (i.e., shall force on hidden columns or rows, hidden work sheets, track changes, can comments). If the file ordinarily to be produced as a TIFF under

this ESI Protocol cannot be expanded, the Requesting Party may request that the native be produced.

(g) To the extent feasible, ESI shall be processed so as to maintain the date/time shown in the document as it was last saved by the custodian or end user, not the date of collection or processing (i.e., shall force off Auto Data).

(h) If a document otherwise subject to production in TIFF under this ESI Protocol cannot be converted to TIFF without error due to corruption or some other issue that renders the document unreviewable, password protection, or some other issue, the document shall be produced in native format consistent with Section III.a. of this ESI Protocol.

(i) English Language: Responsive, non-privileged English-language versions of foreign documents shall not be considered duplicates and should be produced. If no English-language version of a document is available, the Producing Party has no obligation to produce an English translation of that document and has no obligation to render that document text searchable via OCR or other means. The Producing Party shall make reasonable efforts to ensure that all technologies and processes used to collect, process and produce the text of any document – including all TIFF-conversion and OCR processes and the extraction of text from native files – preserves all foreign-language text, punctuation and other characteristics as they exist in the source native file. To the extent reasonably and technically possible, foreign-language text files shall be delivered in UTF-8 and be Unicode compliant, with the correct encoding to enable the preservation of the documents' original language.

V.      **Assertions of Privilege**

a.      <u>Privilege Log Exclusions</u>. The Parties agree that the following categories of information, if protected by the attorney-client privilege or the work product doctrine, need not be included in a privilege log subject to the limitations in (vi) below:

   i.  Communications concerning the MDL or this action exclusively between counsel (including in-house counsel) and their respective clients.

   ii.  Communications concerning this action exclusively between counsel (including in-house counsel) for the Parties to the extent such communications are subject to the common interest/joint defense doctrine in the MDL or this action.

   iii.  Communications between counsel (including in-house counsel) and their respective clients regarding scheduling logistics, or other non-substantive ministerial matters in the MDL or this action.

   iv.  Communications regarding litigation holds, preservation, collection, or review in MDL or this action.

   v.  Communications, privileged materials or work product protected by the Parties' Expert Stipulation.

   vi.  For MDL-related privileged communications pre-dating November 2020 that would fall within exclusion categories (i) to (iv) and which have not been produced or logged, Plaintiffs will propose search terms to Defendants that Defendants will run against the excluded documents to identify documents to include on Defendants' privilege logs. The Parties agree to meet and confer regarding any objections and alternative search term

16

proposals or modifications by Defendants to specific search terms based on the results of those searches. To the extent the Parties cannot reach agreement on Defendants' objections to specific search terms based on the results of those searches, the Parties may seek Court intervention consistent with Section VI(d) of this protocol.

vii. Communications exclusively between a Party and its outside counsel that are unrelated to the MDL or this action, but are part of an otherwise responsive document family.

viii. Redacted documents need not be logged so long as: (1) the information that would otherwise appear on a metadata privilege log is not redacted; (2) the REDACTED metadata field is populated with "Y"; and (3) the basis for the redaction is apparent from the face of the document. The Parties reserve the right to request privilege log entries consistent with Section V(b) for specific redacted documents if the basis for the redaction of the document cannot be determined from its face.

b. <u>Privilege Log Format</u>. Parties shall generate a listing of all other withheld or redacted responsive documents and ESI not subject to the exclusions in Section V(a) in electronic spreadsheet format in compliance with Fed. R. Civ. P. 26(b)(5) and consistent with the below provisions:

i. Whether generated manually or as a metadata privilege log pursuant to Section V(b)(iv), privilege logs shall include the following fields:

a. A unique privilege log identifier or the Bates number assigned to such document;

    b.  Author;

    c.  From;

    d.  To;

    e.  CC;

    f.  BCC;

    g.  Date Sent, Received, or Created;

    h.  Subject (for emails) or File Name (for non-emails);

    i.  Document/File Type; and

    j.  Page Count or File Size.

ii.  Privilege logs shall identify the attorneys on the privilege log by using an asterisk (*) next to their name or email address.

iii.  To the extent a Producing Party seeks to identify privileged discoverable information by category, the Parties agree to meet and confer to identify the specific categories for which the Producing Party seeks to employ categorical logging, determine whether categorical logging is appropriate for such categories, and, if appropriate, identify the information needed for the Receiving Party to discern the nature of the claim for withholding production and the scope of the privileged discoverable information withheld.

iv.  Each Party's privilege log needs to provide only objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being asserted.

All documents that will appear on a metadata privilege log will be reviewed for an assessment of privilege prior to service of the log.

v. An email thread may be logged as a single entry and Parties utilizing email threading for production need not include metadata for suppressed emails on their privilege logs.

c.   Privilege Log Timing. The Parties agree that privilege logs may be provided on a rolling basis and need not to be served concurrently with written objections to discovery requests or each production of documents. The Parties agree to meet and confer further regarding the timing to exchange privilege logs during discovery. Additionally, a Producing Party will take reasonable efforts to complete its service of privilege logs by February 29, 2024.  To the extent a Producing Party produces documents after February 29, 2024, the Producing Party shall take reasonable efforts to serve any privilege logs for documents contained in or withheld from those productions as soon as practicable following production and, for privilege log entries that involve communications with a custodian who will be deposed, no later than one week prior to that custodian's deposition.

d.   Privilege Challenges. Should a Party, in good faith, have reason to believe a specific entry on another Party's privilege log is responsive and does not reflect privileged information, the Party may request additional information for each specific privilege log entry identified, and the Producing Party will not unreasonably refuse to provide more information about the basis of the asserted privilege for each specific privilege log entry identified by the Requesting Party in compliance with Fed. R. Civ. P. 26(b)(5). After the Producing Party has provided additional information, if a Party, in good faith, has reason to believe a specific redacted or withheld document is responsive and does not reflect privileged or protected discoverable information, the

19

Party shall provide the Producing Party with its reasoning for believing each redacted or withheld document at issue is responsive and not privileged or protected. To the extent the privilege or work product doctrine claim is not withdrawn, the Parties shall meet and confer to try to reach a mutually agreeable solution before elevating the dispute to the Court.

### VI.    General Provisions

a.    <u>Discoverability and Admissibility</u>.    This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  Nothing in this Protocol shall be construed to affect the admissibility of any document or data.  All objections, including but not limited to the discoverability or admissibility of any document or data, are preserved and may be asserted at any time.

b.    <u>Non-Party Documents</u>. A Party that issues a subpoena upon any non-party ("Issuing Party") shall include a copy of this Order and the Protective Order agreed to and/or entered in this litigation with the subpoena and state that the Parties in this litigation have requested that non-parties produce documents in accordance with the specifications set forth herein, to the extent reasonably feasible. The Issuing Party shall promptly produce to all Non-Issuing Parties a copy of any documents and ESI (including any metadata) obtained from a non-party in accordance with the Federal Rules of Civil Procedure and subject to all the procedures and protections set forth in any protective order agreed and/or entered in this litigation.

c.    <u>Modification</u>.  To the extent compliance with this Protocol imposes an undue burden with respect to any procedure, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.  Any practice or procedure set forth herein may be varied by agreement of the respective Requesting and Producing Parties, which will be

confirmed in writing, where such variance is deemed appropriate to facilitate the timely, efficient, and economical exchange of electronic data.

d. <u>Dispute Resolution</u>.  The Parties will attempt to resolve disputes regarding the issues set forth herein prior to filing a motion with the Court or otherwise seeking relief.  Regarding all disputes, if the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

**DONE** and **ORDERED** this July 24, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

## Appendix A

To the extent any provision in this Appendix A is inconsistent with a provision in the body of this Protocol, the provision in the body of this Protocol controls.

### 1.    COVER LETTER

A cover letter shall be included with each production and shall include information sufficient to identify all accompanying media (hard drive, thumb drive, DVD, CD, secure FTP, etc.), shall identify each production on such media by assigning a production volume name or number, and shall include the Bates range for the documents produced in each volume.

### 2.    PRODUCTION LOAD FILES FOR UNSTRUCTURED DATA

There will be three Load/Unitization files accompanying all Productions.

- The first file will be a metadata import file, in Concordance-format delimited file with a .DAT file extension, that contains the agreed upon Metadata fields in UTF-8 encoding.

    **Concordance Data Load Files**:

    1. Data load files shall be produced in Concordance .DAT format.

    2. The data load file shall use standard Concordance delimiters:
        - Comma - ¶ (ASCII 20);
        - Quote - þ (ASCII 254);
        - Newline - ® (ASCII174).

    3. The first line of the .DAT file shall contain the field names arranged in the same order as the data is arranged in subsequent lines.

    4. All date fields shall be produced in mm/dd/yyyy format.

    5. All attachments shall sequentially follow the parent document/email.

    6. Use carriage-return to indicate the start of the next record.

    7. Load files shall not span across media (e.g., CDs, DVDs, hard drives, etc.); a separate volume shall be created for each piece of media delivered.

    8. The name of the data load file shall mirror the name of the delivery volume, and shall have a .DAT extension (e.g., ABC001.DAT).

    9. The volume names shall be consecutive (e.g., ABC001, ABC002, et seq.).

10. If foreign language / Unicode text exists, the .DAT file shall be in UTF-8 or UTF-16 format where appropriate, consistent with this ESI Protocol.

- To the extent that an overlay is required, a second file will contain the "All Files Path" field and the BEGINDOC field.
- The third file will be a cross-reference file that contains the corresponding image information identifying document breaks. The acceptable formats for the cross-reference files are .log and .opt.

### Image Load Files

1. The name of the image load file shall mirror the name of the delivery volume, and shall have the appropriate extension (e.g., ABC001.OPT).

2. The volume names shall be consecutive (e.g., ABC001, ABC002, *et seq*.).

3. There shall be one row in the load file for every TIFF image in the production.

4. Every image in the delivery volume shall be cross-referenced in the image load file.

5. The imageID key shall be named the same as the Bates number of the page.

6. Load files shall not span across media (e.g., CDs, DVDs, hard drives, etc.), *i.e.*, a separate volume shall be created for each piece of media delivered.

7. Files that are the first page of a logical document shall include a "Y" where appropriate. Subsequent pages of all documents (regular document, email, or attachment) shall include a blank in the appropriate position.

## 3. NATIVES

- Microsoft Excel spreadsheets and other spreadsheet files, including comma or tab delimited text files;

- Microsoft Power Point or other presentation files;

- Video or audio media files, or other documents that cannot be rendered to TIFF conversion.

- If a Requesting Party reasonably deems the quality of the document produced in TIFF format to be insufficient, the Parties will meet and confer in good faith to determine whether the Producing Party must produce the document in native format, or whether such document must be produced as a color image.

- The production load file shall contain a path link to the produced native file in the "NATIVELINK" metadata field as described in the field list.

- Each document produced in a native file format shall have an accompanying TIFF image placeholder.

## 4.    STRUCTURED DATA

To the extent possible, all exports of structured data or reports from databases will be produced in data table, .csv file, Excel file, or other delimited text format. The Producing Party will provide descriptions, such as within a data dictionary, of any non-common fields for which the values are not readily apparent or publicly available, to the extent that information is available. If an existing report format is not reasonably available or usable, the Parties will meet and confer to attempt to identify a mutually agreeable form of production based on the specific needs and the content and format of data within the structured data source.

## 5.    ESI (AND PAPER TO THE EXTEXT APPLICABLE) METADATA PRODUCTION FIELDS

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| BEGINDOC | Start Bates (including prefix) | All |
| ENDDOC | End Bates (including prefix) | All |
| BEGATTACH | Parent Start Bates (including prefix) | All |
| ENDATTACH | Last Attachment End Bates (including prefix) | All |
| PAGECOUNT | Number of pages in document using Bates numbers. | All |
| CUSTODIAN | Source of document (i.e., individual custodian name, database or archive name, shared area, etc.) | All |
| ALLCUSTODIAN | When horizontal (global) de-duplication has been employed, the custodians who had duplicates of the identical document | Email, EFiles |
| FILEEXTENSION | File extension of electronic document | Email, EFiles |
| FILENAME | File name of electronic document | Email, EFiles |
| FILESIZE | Size of the file in bytes. | Email, EFiles |
| ALLFILEPATHS | The directory structure or path where the original file was stored on the computer for the custodians identified in the AllCustodian metadata field. The data contained in the field shall start with the identification of the other custodian followed by the source file | Email, EFiles |

| | path. This field is required only when a Producing Party de-duplicates ESI horizontally (globally). | |
|---|---|---|
| FILEPATH | File path to native file as it existed in original environment | Email, EFiles |
| FOLDERPATH | The path to the original folder in which the document was located. | Email, EFiles |
| DATETIMESENT | Sent date of an email message (mm/dd/yyyy format) / time e-mail was sent (hh:mm:ss) | Email |
| DATETIMERECEIVED | Received date of an email message (mm/dd/yyyy format) / time e-mail was received (hh:mm:ss format) | Email |
| DATETIMECREATED | Date that a non-email electronic file was created (mm/dd/yyyy format) / time that a non-email electronic file was created (hh:mm:ss format) | EFiles |
| DATELASTMODIFIED | Date that a non-email electronic file was last modified (mm/dd/yyyy format) / time that a non-email electronic file was created (hh:mm:ss format) | EFiles |
| AUTHOR | Author field extracted from the metadata of a non-email. | EFiles |
| TO | To or Recipient field extracted from an Email. | Email |
| FROM | From or Sender field extracted from an Email. | Email |
| CC | CC or Carbon Copy field extracted from an Email. | Email |
| BCC | BCC or Blind Carbon Copy field extracted from an Email. | Email |
| SUBJECT | Subject line extracted from an Email. | Email |
| TITLE | Title field extracted from the Metadata of a non-Email. | EFiles |
| APPLICATION | Indicates software application that generated the ESI item (e.g., Outlook, Word). | Email, EFiles |
| ATTACHMENTCOUNT | Populated for Email parent records and indicates the number of attachments that constitute the whole family (BegAttach to EndAttach) | Email |
| CONFIDENTIALITY | Level of Confidentiality per Protective Order | All |

| REDACTED | Does the document contain redactions (Y/N)? | All |
|---|---|---|
| HASHVALUE | MD5 or SHA1 hash value (used for de-duplication or other processing) | All |
| SOURCEPARTY | The Producing Party. | All |
| NATIVELINK | Path and filename to produced native file format (see Section III.a). | Email, EFiles |
| TEXT | Link to full text file or OCR text file | All |
| PROCESSING_TIMEZONE | The time zone used for data processing | Email, EFiles |
| PRODUCTION VOLUME | Production volume name and number | All |
| EMAIL THREAD GROUP | Groups produced email threads with lesser-included metadata. This field (or equivalent) will only populate for Parties who use e-mail threading for production. | Email |
| EMAIL THREADING ID | Sorts e-mail thread groups. This field (or equivalent) will only populate for Parties who use e-mail threading for production. | Email |
| CONTROL ID | Unique identifier for each document suppressed from production because of email threading. | Email |